# EXHIBIT 1

LAW OFFICES OF STEPHENSON, ACQUISTO & COLMAN, INC.
JOY STEPHENSON-LAWS, ESQ. (SBN 113755)
RICHARD A. LOVICH, ESQ. (SBN 113472)
NESREIN EL-HADDAD, ESQ. (SBN 314965)
500 N. Brand Blvd., Suite 1450
nhaddad@sacfirm.com
Glendale, CA 91203
Telephone:  (818) 559-4477
Facsimile:   (818) 559-5484

Attorneys for Plaintiff,
DIGNITY HEALTH

ELECTRONICALLY
**F I L E D**
Superior Court of California,
County of San Francisco

**07/08/2025**
**Clerk of the Court**
BY: WILMA CORRALES
Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA
# FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| DIGNITY HEALTH,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>BLUE CROSS BLUE SHIELD OF GEORGIA, a Georgia for-profit corporation; and DOES 1 THROUGH 25, INCLUSIVE,<br><br>　　　　　Defendants. | Case No.: **CGC-25-626990**<br><br>COMPLAINT FOR DAMAGES FOR:<br><br>1. BREACH OF IMPLIED-IN-FACT CONTRACT; and<br><br>2. *QUANTUM MERUIT* |

## PARTIES

1. Plaintiff DIGNITY HEALTH ("DIGNITY HEALTH") is a California non-profit public benefit corporation. DIGNITY HEALTH owns and operates multiple medical facilities across the state of California. DIGNITY HEALTH has its principal place of operation in the City of San Francisco, County of San Francisco, California. DIGNITY HEALTH provides medical care to patients.

2. Defendant Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. ("BLUE CROSS") is a for- profit corporation organized and existing pursuant to the laws of the State of Georgia. BLUE CROSS has its principal place of business in the City of Atlanta, County of Fulton, State of Georgia. BLUE CROSS is in the business of arranging for the provision of health care services to its enrollees and/or paying for the provision of health care services to its enrollees and/or paying for or reimbursing part of all of the costs for those services.

3. DIGNITY HEALTH is unaware of the true names and capacities, whether corporate, associate, individual, partnership or otherwise of defendants Does 1 through 25, inclusive, and therefore, sues such defendants by such fictitious names. DIGNITY HEALTH will seek leave of the Court to amend this complaint to allege their true names and capacities when ascertained.

4. BLUE CROSS and Does 1 through 25, inclusive, shall be collectively referred to as Blue Cross.

5. Defendants, and each of them, at all relevant times, have transacted business in the State of California. The violations alleged within this complaint have been and are being carried out in the State of California.

6. At all relevant times each of the defendants, including the defendants named "Doe," was and is the agent, employee, employer, joint venturer, representative, alter ego, subsidiary, and/or partner of one or more of the other defendants, and was, in performing the acts complained of herein, acting within the scope of such agency, employment, joint venture, or partnership authority, and/or is in some other way responsible for the acts of one or more of the other

defendants.

# COMMON FACTUAL BACKGROUND

7. DIGNITY HEALTH provided medically necessary treatment to the patients identified on the spreadsheet attached as **Exhibit A** to this complaint (and which is incorporated hereto by this reference as though set forth in full) (the "Patients") on the various dates identified on the spreadsheet from November 8, 2022 to August 20, 2024.

8. DIGNITY HEALTH is informed and believes and thereon alleges that at all relevant times the Patients were enrollees of a health plan sponsored, administered and/or financed by BLUE CROSS [1].

9. DIGNITY HEALTH is informed and believes and thereon alleges that at all relevant times, BLUE CROSS provided, arranged, and/or paid for healthcare services for its enrollees, including the Patients set forth in **Exhibit A**.

10. At all relevant times, DIGNITY HEALTH is informed and believes and thereon alleges that BLUE CROSS instructed its members to go to the nearest emergency hospital to obtain medically necessary services (including emergency related medical services) when the members believe they are experiencing an emergency medical condition, and that BLUE CROSS would pay the emergency hospital for the emergency related services.

---

[1] DIGNITY HEALTH has limited the disclosure of patients' identification information here pursuant to the privacy provisions of the federal Health Insurance Portability & Accountability Act ("HIPAA"), 42 U.S.C. §§ 1320(d) *et seq.*, and the California Constitution, art. 1, § 1.

11. Under the Emergency Medical Treatment and Labor Act ("EMTALA") and California Health and Safety Code §1371.4(b), BLUE CROSS was legally responsible for reimbursing Plaintiffs for the services rendered.

12. It is DIGNITY HEALTH's practice to verify eligibility for medical care based on a patient's health care plan on or before the date the patient is treated at DIGNITY HEALTH. It is also DIGNITY HEALTH's practice to obtain an approval to provide certain services where a patient's health care plan requires such "prior authorization."

13. DIGNITY HEALTH contacted BLUE CROSS and/or its agents to ascertain whether BLUE CROSS or its principal was responsible for the costs associated with the medically necessary services, emergency services, supplies and/or equipment rendered to the Patients. In response, DIGNITY HEALTH received confirmation of the relevant insurance verification and insurance coverage eligibility information for the Patients under BLUE CROSS's health plan. In addition, prior to the treatment rendered by DIGNITY HEALTH to the Patients, DIGNITY HEALTH and BLUE CROSS impliedly agreed and understood that DIGNITY HEALTH would render medically necessary care to employees/enrollees/members of, submit bills for such care, and that BLUE CROSS would pay DIGNITY HEALTH at the usual and customary and/or agreed upon rates as full and final settlement of such care.

14. On the dates of service set forth in Exhibit A, DIGNITY HEALTH rendered medically necessary services, supplies and/or equipment to the Patients until the Patients became stable for discharge from DIGNITY HEALTH or as authorized thereafter.

15. At all relevant times, BLUE CROSS and/or its agent authorized the medical services rendered to the Patients by DIGNITY HEALTH.

16. DIGNITY HEALTH admitted the Patients into its facility for medically necessary services, emergency services, supplies and/or equipment during the various dates of service as set forth in **Exhibit A** and provided such services, supplies and/or equipment.

17. There was no contract or agreement between the parties granting BLUE CROSS any discount from the chargemaster posted charges for the services rendered.

18. The total billed charges for the medically necessary services, supplies and/or equipment rendered to the Patients amounted to $1,628,283.36.

19. DIGNITY HEALTH timely and properly submitted to BLUE CROSS, and/or its agent its bill for the medically necessary services, emergency services, supplies and/or equipment rendered to the Patients, for payment by BLUE CROSS.

20. BLUE CROSS failed to fully pay DIGNITY HEALTH for the medically necessary services, supplies and/or equipment rendered to the Patients, despite demands thereof.

21. As a direct and proximate result of BLUE CROSS's wrongful conduct of refusing to pay DIGNITY HEALTH for the medically necessary services, supplies and/or equipment DIGNITY HEALTH rendered to the Patients, DIGNITY HEALTH suffered damages in an amount to be proven at trial

according to proof but not less than the sum of $712,529.22, exclusive of interest.

## FIRST CAUSE OF ACTION

(Breach of Implied-In-Fact Contract)

(Against Defendants BLUE CROSS and Does 1 through 25)

22. DIGNITY HEALTH incorporates by reference and re-alleges paragraphs 1 through 31 here as though set forth in full.

23. As is custom and practice in the health care industry, sometimes hospitals and health plans form contracts through their conduct even though they do not exchange express promises, contracts under which a hospital agrees to render medically necessary services (including emergency related medical services) to a member of a health plan; and in return the health plan agrees to pay for such health care at the hospital's regular rates in place at the time of service. Such implied-in-fact contracts can arise from a variety of manifested conduct which includes, among other things,: (a) when a hospital calls up the health plan to ask for authorization of care for a particular member of that health plan and the plan does not deny and/or does not coordinate the transfer of its members, (b) when a hospital calls up the health plan to provide concurrent review during the hospital stay and the plan does not deny and/or does not coordinate the transfer of its members, or (c) when a hospital renders medical care to a health plan's member in an emergency situation.

24. Prior to the treatment rendered by DIGNITY HEALTH and through on custom and practice, DIGNITY HEALTH and BLUE CROSS impliedly agreed and understood that DIGNITY HEALTH would render medically necessary care to BLUE CROSS's enrollees, submit bills for such care to BLUE

CROSS, and that BLUE CROSS would pay DIGNITY HEALTH for the necessary medical treatment rendered to the Patients. Specifically, upon stabilization of the Patients in DIGNITY HEALTH's emergency department and during the dates that DIGNITY HEALTH admitted the Patients to its facility for medical services, DIGNITY HEALTH contacted BLUE CROSS to verify the Patients' healthcare eligibility under BLUE CROSS's health plan and authorization from BLUE CROSS for the medical services if necessary. In response, BLUE CROSS represented that the Patients were beneficiaries of BLUE CROSS's health plan and authorized DIGNITY HEALTH to continue treating the Patients.

25. On or about the time DIGNITY HEALTH rendered treatment to the Patients, DIGNITY HEALTH and BLUE CROSS had entered into an implied-in-fact contract as demonstrated by custom and practice as well as the actions and conduct of BLUE CROSS. DIGNITY HEALTH alleges that BLUE CROSS offered to reimburse DIGNITY HEALTH should DIGNITY HEALTH provide medically necessary care to BLUE CROSS enrollees. DIGNITY HEALTH accepted that offer and did in fact provide medically necessary care to BLUE CROSS enrollees. DIGNITY HEALTH properly billed BLUE CROSS for the medically necessary services, and BLUE CROSS did in fact reimburse DIGNITY HEALTH for a portion of the services rendered in partial compliance with the implied-in-fact contract. The dispute in this matter is not whether BLUE CROSS should have paid DIGNITY HEALTH, but rather as to the amount BLUE CROSS should have paid to DIGNITY HEALTH for the Patients.

26. Since BLUE CROSS is a "health care service plan" as defined in the California Health and Safety Code, at all relevant times BLUE CROSS was under a statutory duty to pay for emergency services and care provided to its enrollees until each enrollee was stabilized pursuant to California Health and

Safety Code §1371.4(b). DIGNITY HEALTH rendered medically necessary emergency services, supplies and/or equipment to the Patients from the time of the Patients' admissions, as set forth in Exhibit A, to the time when the Patients' conditions had sufficiently stabilized to enable the Patients to be discharged or transferred. California Health & Safety Code § 1371.4(b) provides, in pertinent part: "[a] health care service plan shall reimburse providers for emergency services and care provided to its enrollees." BLUE CROSS violated California Health & Safety Code § 1371.4 by failing to fully reimburse DIGNITY HEALTH for the medically necessary, emergency services, supplies and/or equipment rendered to the Patients.

27. In respect to potential post-stabilization care, Health & Safety Code Section 1371.4(d) places the onus and burden upon BLUE CROSS to arrange for transfer, otherwise the services are deemed authorized: "[i]f there is a disagreement between the health care service plan and the provider regarding the need for necessary medical care, following stabilization of the enrollee, the plan shall assume responsibility for the care of the patient…[i]f the health care service plan fails to satisfy the requirements of this subdivision, further necessary care shall be deemed to have been authorized by the plan. Payment for this care may not be denied." Here, for the Patients, DIGNITY HEALTH timely notified BLUE CROSS, and continued to update BLUE CROSS, on the Patients' clinical disposition. BLUE CROSS made no attempts to transfer the Patients and failed to assume responsibility of the Patients' care.

28. DIGNITY HEALTH performed all conditions required on its part to be in accordance with the terms and conditions of that implied-in-fact contract. DIGNITY HEALTH reasonably relied on BLUE CROSS's promises and conduct to pay for medical services and treated the Patients in reliance on those

1   promises and upon such conduct.

2

3           29.     BLUE CROSS's own conduct manifested an implicit request
4   for DIGNITY HEALTH to render medically necessary services (including
5   emergency related medical services) to its members:  first, BLUE CROSS
6   instructed its members to seek emergency relates medical services at the nearest
7   emergency hospital; second, BLUE CROSS verified insurance eligibility
8   information for the Patients under BLUE CROSS's health plans; third BLUE
9   CROSS authorized the medical services for the Patients; fourth, BLUE CROSS
10  failed to make arrangement to transfer the Patients to another hospital; and fifth,
11  BLUE CROSS issued partial payment for the medical services rendered to the
12  Patients.

13

14          30.     DIGNITY HEALTH demanded that BLUE CROSS perform its
15  obligations to properly reimburse DIGNITY HEALTH for the medically necessary
16  services, supplies, and/or equipment rendered to the Patients.

17

18          31.     BLUE CROSS breached the implied-in-fact contract created by
19  custom and practice and the parties' conduct by issuing only partial payment to
20  DIGNITY HEALTH or causing DIGNITY HEALTH to be underpaid for the
21  medically necessary services, supplies and/or equipment rendered or supplied to
22  the Patients.

23

24          32.     As a result of BLUE CROSS's breach of the implied contract,
25  DIGNITY HEALTH suffered damages in an amount to be proven at trial but not
26  less than the sum of $712,529.22, exclusive of interest.

27

28

## SECOND CAUSE OF ACTION

(*Quantum Meruit*)

(Against Defendants BLUE CROSS and Does 1 through 25)

33. DIGNITY HEALTH incorporates by reference and re-alleges paragraphs 1 through 32, here as though set forth in full.

34. By its words and/or conduct, BLUE CROSS requested that DIGNITY HEALTH provide the Patients with medically necessary services, supplies and/or equipment.

35. DIGNITY HEALTH is informed and believes and thereon alleges that at all relevant times, the Patients, as members of BLUE CROSS's health plans, paid premiums for medical coverage. In exchange for such payment of premiums, Patients expected, and BLUE CROSS made promises thereon, BLUE CROSS to accept, process, arrange for, and/or pay hospitals for the medically necessary services (including emergency related medical services) rendered to the Patients.

36. Acting pursuant to BLUE CROSS's implied and/or express request, DIGNITY HEALTH provided the Patients with medically necessary services, supplies and/or equipment.

37. DIGNITY HEALTH's rendering of medically necessary services, supplies and/or equipment to the Patients was intended to, and did, benefit the Patients and therefore BLUE CROSS because it allowed BLUE CROSS to make good on promises made to their members that their members and their families would receive and be covered for medically necessary services and would

shield their members from the bulk of the financial responsibility for payment for medical care received by them and their families. For example, when the plan beneficiaries pay premiums, BLUE CROSS become obligated to accept, process, arrange for, and/or pay health care providers for the value of medical services rendered to their members and/or their families. Thus, by fulfilling its coverage obligations to its plan members and their families, BLUE CROSS do not have to face allegations that they breached any duties owed to the plan members and their families. In other words, by rendering medically necessary services to Patients upon BLUE CROSS, DIGNITY HEALTH helped BLUE CROSS fulfill their legal duty to arrange for and/or pay for medically necessary services to its members, including the Patients. Thus, a benefit accrued to BLUE CROSS and DIGNITY HEALTH is entitled to the reimbursement of the reasonable value of the services. The reasonable value of the services is DIGNITY HEALTH's usual and customary full bill charges..

38. For rendering the medically necessary services, supplies and/or equipment to the Patients, DIGNITY HEALTH reasonably expected full reimbursement of its billed charges at its usual and customary rates.

39. As stated above, DIGNITY HEALTH's usual and customary total billed charges for the medically necessary services, supplies and/or equipment it rendered to the Patients were at least $1,628,283.36.

40. DIGNITY HEALTH demanded BLUE CROSS pay for the medically necessary services, supplies and/or equipment it rendered to the Patients, but BLUE CROSS failed to properly pay DIGNITY HEALTH in full.

41. As a result of BLUE CROSS's misconduct, DIGNITY

HEALTH has suffered damages in an amount to be proven at trial according to proof, but which amounts to at least $712,529.22, exclusive of interest.

## PRAYER FOR RELIEF

**WHEREFORE**, DIGNITY HEALTH prays for judgment as follows:

For all Causes of Action stated herein:

1. for the principal sum of $712,529.22;

2. for interest on such principal sum at the rate of 15% per annum, pursuant to Cal. Health & Safety Code § 1371; or, in the alternative, for interest on such principal sum at the rate of 10% per annum, pursuant to Cal. Civ. Code § 3289;

3. for all costs of suit incurred herein; and

4. for such other and further relief as the Court deems just and proper.

Dated: 8 July 2025

STEPHENSON, ACQUISTO & COLMAN, INC.

_____
JENNIFER JIAO
NESREIN EL-HADDAD
Attorneys for
DIGNITY HEALTH

# Exhibit A

Dignity Health v. Blue Cross Blue Shield of Georgia

FC 40545

| No. | File Number | Admit Date | Discharge Date | Total Paid | Underpaid |
|---|---|---|---|---|---|
| 1 | 0000089308142 | 3/24/2023 | 3/24/2023 | $0.00 | $23,159.61 |
| 2 | 0080012810471 | 6/30/2023 | 7/2/2023 | $0.00 | $19,966.00 |
| 3 | 0074028989031 | 8/20/2024 | 8/20/2024 | $0.00 | $3,154.00 |
| 4 | 0032012619758 | 8/19/2023 | 8/24/2023 | $0.00 | $55,110.00 |
| 5 | 0000044174381 | 3/29/2024 | 3/30/2024 | $0.00 | $12,574.00 |
| 6 | 0066008842230 | 4/27/2024 | 4/30/2024 | $0.00 | $27,711.00 |
| 7 | 0062001574508 | 6/30/2023 | 7/1/2023 | $0.00 | $7,606.00 |
| 8 | 0000307497677 | 3/2/2023 | 3/4/2023 | $0.00 | $13,956.08 |
| 9 | 0040008491272 | 8/6/2023 | 8/7/2023 | $0.00 | $11,856.00 |
| 10 | 0007007432565 | 7/20/2023 | 7/25/2023 | $28,790.00 | $43,185.00 |
| 11 | 0080012273613 | 2/20/2023 | 4/11/2023 | $57,908.00 | $344,332.00 |
| 12 | 0000012515730 | 4/30/2023 | 5/13/2023 | $208,429.00 | $62,244.53 |
| 13 | 0000214107690 | 11/8/2022 | 11/16/2022 | $12,525.00 | $87,675.00 |
| | | | | | $712,529.22 |